**SO ORDERED.**

**SIGNED this 25 day of August, 2017.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:                                                                          CASE NO. 17-03343-5-DMW

CLIFFORD EARL HUTTON
                                                                                CHAPTER 13
         DEBTOR

## MEMORANDUM OPINION REGARDING TURNOVER OF VEHICLES

This matter comes on to be heard upon the Emergency Motion for Turnover ("Motion") filed by Clifford Earl Hutton ("Debtor") on July 11, 2017, the Response in Opposition to Debtor's Emergency Motion for Turnover filed by the Onslow County Sheriff's Department ("OCSD") on July 17, 2017 and the Response in Opposition to Emergency Motion for Turnover filed by Principis Capital, LLC ("Principis") on July 17, 2017. The court conducted a hearing in Raleigh, North Carolina on July 18, 2017. Joseph Z. Frost, Esq. appeared for the Debtor, Benjamin R. Eisner, Esq. appeared for the OCSD, and John C. Bircher III, Esq. appeared for Principis. On July 19, 2017, the court entered an Order allowing the Motion. This Memorandum Opinion details the court's findings and conclusions contained in the July 19, 2017 Order. Based upon the pleadings, the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on July 7, 2017 ("Petition Date").

3. The Debtor is the sole proprietor of a specialized diesel mechanic shop known as Triple-C Diesel Performance ("Triple-C") and located in Jacksonville, Onslow County, North Carolina. The Debtor previously conducted business as member of Triple-C Diesel Performance, LLC. The Debtor's spouse is also employed by Triple-C.

4. The Debtor purports to own three vehicles, of which only two are at issue in this matter. One is a 1999 Dodge Ram Truck, Vehicle Identification Number 1B7MF3369XJ592892 ("Dodge"), and the other is a 2001 Ford SRW Super Duty Truck, Vehicle Identification Number 1FTSW30FX1EA89531 ("Ford") (collectively "Vehicles").

5. Prior to the Petition Date, on November 21, 2016, Principis obtained a judgment from the Supreme Court of the State of New York against the Debtor in the amount of $52,347.00. Principis domesticated its judgment in Onslow County.

6. Sergeant Timothy Parker ("Sgt. Parker") of the OCSD testified about his involvement with the execution upon the Principis judgment. On June 30, 2017, in his capacity as a deputy with the OCSD and pursuant to a Writ of Execution issued by the Deputy Clerk of Superior Court of Onslow County at the request of Principis, Sgt. Parker seized the Vehicles from the Debtor and moved the Vehicles to James Body Shop, 3433 Burgaw Highway in Jacksonville for storage.

7.   The Dodge is titled in the Debtor's name.  The Debtor and his spouse personally use the Dodge daily including commuting to work.  The Debtor estimates the Dodge has a value of $6,000.00.

8.   The Ford is titled in the name of Jacksonville Paving Co. Inc. ("Jacksonville Paving").  The Debtor testified he accepted the Ford as payment for mechanical work worth $500.00 performed by Triple-C for Jacksonville Paving.  The Ford does not have a transmission or engine and is not registered for operation on public roads.  The Ford is used for advertisement purposes and is vinyl-wrapped with the Triple-C name and logo.  The Debtor testified that his business income declined in the weeks that the Ford was not present outside of Triple-C because of the levy.  The Debtor testified that the Ford has a value of $5,000.00, but subsequently clarified that if the Ford were sold through a private sale, rather than at auction, it might sell for up to $10,000.00.

9.   Before levying on the Vehicles, Sgt. Parker spoke with the Debtor to obtain information on what assets the Debtor owned.  Upon determining the Ford is not titled in the Debtor's name, Sgt. Parker obtained a notarized letter from Jacksonville Paving stating it sold the Ford to the Debtor.  Sgt. Parker testified that his contact at the North Carolina Division of Motor Vehicles ("DMV") informed him a notarized letter from Jacksonville Paving would be sufficient to allow Sgt. Parker to obtain a title application for the purchaser of the Ford at an execution sale.

10.  Sgt. Parker checked the DMV database for any liens recorded on the titles to the Vehicles.  Finding no liens of record, Sgt. Parker seized the Dodge and Ford, notified the DMV to place a title hold on each, and scheduled an execution sale for July 29, 2017.  Sgt. Parker submitted to the DMV Forms LT-101 "Notice of Sale of a Motor Vehicle – 20-day Advance Notice to Division of Motor Vehicles" which identified the Vehicles by make, model year, body style and

vehicle identification number.[1]  The copies of the Forms LT-101 which Sgt. Parker received back from the DMV are dated June 30, 2017 and indicate the DMV received the Forms LT-101 on July 5, 2017.

    11.    The Internal Revenue Service ("IRS") has tax liens ("Tax Liens") on all property of "Triple-C Diesel Performance, LLC Clifford Earl Hutton Sole Member."[2]  The Debtor asserts the IRS has filed notices of Tax Liens totaling $34,998.64 with the Onslow County Clerk of Superior Court and the North Carolina Secretary of State as follows:

| NFTL File No. | Date Filed | Outstanding Balance |
|---|---|---|
| 16-M-32 | February 2, 2016 | $18,987.97 |
| 16-M-84 | February 23, 2016 | $7,262.96 |
| 16-M-530 | October 31, 2016 | $3,080.75 |
| 17-M-257 | May 2, 2017 | $5,666.96 |

The Debtor testified the IRS has levied upon funds in his personal account and the Triple-C bank account, but he did not provide information sufficient to determine the current balance of the Tax Liens.  Sgt. Parker testified that he did not perform a search that would have revealed the Tax Liens as potential encumbrances on the Vehicles.

    12.    After the OCSD seized the Vehicles, the Debtor's spouse traveled to visit with her family in Florida, and the Debtor has been using his third vehicle for transportation.

    13.    Through the Motion, the Debtor seeks turnover of the Vehicles pursuant to 11 U.S.C. § 542.  The Debtor also asserts Principis' lien was not perfected upon levy by Sgt. Parker

---

[1] Sgt. Parker followed the protocol outlined in N.C. Gen. Stat. § 20-114(c) (1998) ("It shall . . . be the duty of every law enforcement officer to make immediate report to the Commissioner [of the DMV] of all motor vehicles . . . that are . . . seized and are subject to forfeiture pursuant to G.S. 20-28.2, *et seq*., or any other statute, and no motor vehicle shall be sold by any sheriff, police or peace officer, or by any person, firm or corporation claiming a mechanic's or storage lien, or under judicial proceedings, until notice on a form approved by the Commissioner shall have been given the Commissioner at least 20 days before the date of such sale."); *see also* 19A N.C.A.C. 03D.0404 (1982).

[2] It is unclear whether the Tax Liens have attached to the Ford, as Jacksonville Paving had not transferred title of the Ford into the Debtor's name as of the Petition Date; however, that question is not before the court and has little effect upon the issue currently before the court.

and the OCSD. The Debtor concedes that Principis secured a lien at the time of the levy, pursuant to N.C. Gen. Stat. § 1-313, but relies on N.C. Gen. Stat. § 20-58 and *In re Mills International, Inc.*, 2015 Bankr. LEXIS 958 (Bankr. E.D.N.C. Mar. 27, 2015), *aff'd*, 2016 U.S. Dist. LEXIS 9076 (E.D.N.C. Jan. 7, 2016), asserting that Principis has not perfected its lien.

14. Principis contends that N.C. Gen. Stat. § 20-58 only applies to liens that arise by agreement and does not apply to nonconsensual liens. Principis relies on *Community Credit Co. v. Norwood*, 125 S.E.2d 369 (N.C. 1962) and *Ferguson v. Morgan*, 191 S.E.2d 817 (1972), asserting the liens attached and were perfected upon levy. Principis asserts it did not surrender the Vehicles upon the filing of the Motion, because it believed it would lose its perfected status if it returned the Vehicles to the Debtor without an Order of this court.

<u>Principis' Lien was not Perfected on the Petition Date</u>

15. The levy on the Vehicles by the OCSD absolutely created a lien on the Vehicles. A lien is established on a debtor's personal property upon the levy of that property. N.C. Gen. Stat. § 1-313 (2011) ("[N]o execution against the property of a judgment debtor is a lien on his personal property, as against any bona fide purchaser from him for value, or as against any other execution, except from the levy thereof."). Even though the seizure created liens, pursuant to N.C. Gen. Stat. § 20-58, those liens were never perfected because Principis' interest was never noted on the certificates of title.

16. Principis disputes the application of N.C. Gen. Stat. § 20-58(a)(2), which requires a notation on the certificate of title to perfect a security interest in a vehicle, because the lien created by the levy was not a consensual agreement. Section 20-58, entitled "Perfection by indication of security interest on certificate of title," states as follows:

5

> Except as provided in G.S. 20-58.8, a security interest in a vehicle of a type for which a certificate of title is required shall be perfected only as hereinafter provided. . . . If the vehicle is registered in [North Carolina], the application for notation of a security interest shall be in the form prescribed by the [DMV], signed by the debtor, and contain the date of application of each security interest, and name and address of the secured party from whom information concerning the security interest may be obtained.

N.C. Gen. Stat. § 20-58(a)(2) (2016).

17. Principis cites N.C. Gen. Stat § 20-4.01(41) which defines a security interest in a vehicle. That statute defines a security interest as

> [a]n interest in a vehicle reserved or created *by agreement* and which secures payments or performance of an obligation. The term includes but is not limited to the interest of a chattel mortgagee, the interest of a vendor under a conditional sales contract, the interest of a trustee under a chattel deed of trust, and the interest of a lessor under a lease intended as security. A security interest is "perfected" when it is valid against third parties generally.

N.C. Gen. Stat. § 20-4.01(41) (2016) (emphasis added). Principis argues that if no agreement for the lien exists, then N.C. Gen Stat. § 20-58 does not apply. This position ignores the language of § 20-4.01(41) stating the term "security interest" "includes *but is not limited to* the interest of a chattel mortgagee, the interest of a vendor under a conditional sales contract, the interest of a trustee under a chattel deed of trust, and the interest of a lessor under a lease intended as security." N.C. Gen. Stat. § 20-4.01(41) (emphasis added).

18. Moreover, N.C. Gen Stat. § 20-58 refers to N.C. Gen. Stat. § 20-58.8 for exceptions to its applicability. That statute states as follows:

> [t]he provisions of G.S. 20-58 through 20-58.8 inclusive shall not apply to or affect:
>     (1)  A lien given by statute or rule of law for storage of a motor vehicle or to a supplier of services or materials for a vehicle;
>     (2)  A lien arising by virtue of a statute in favor of the United States, this State or any political subdivision of this State; or
>     (3)  A security interest in a vehicle created by a manufacturer or by a dealer in new or used vehicles who holds the vehicle in his inventory.

6

N.C. Gen. Stat. § 20-58.8. (2000). Section 58.8 does not list as an exception to the requirements of N.C. Gen Stat. § 20-58 a lien created by a levy. If the North Carolina General Assembly intended for § 20-58 not to apply to liens created through a judicial proceeding (a judgment execution in this case), then Section 20-58.8 would have specially included that type of debt collection enforcement within the statute.

19. N.C. Gen. Stat. § 20-58.8 *does* list scenarios in which a lien is created in the absence of an agreement, implying the provisions of N.C. Gen Stat. §§ 20-58 through 20-58.8 do not apply solely to security interests created by agreement. If N.C. Gen Stat. § 20-58 applied only to interests created by agreement, the listing of the exceptions in N.C. Gen. Stat. § 20-58.8 that involve liens created without agreement would be unnecessary.

20. Citing *Norwood*, Principis argues the levy perfected the lien. The *Norwood* court stated "[i]f the officer acted under and as directed by judicial process directed to him when he claims to have seized the car on 13 December 1961, the lien so created would have priority over the lien of intervenor recorded on 15 December 1961." *Norwood,* 125 S.E.2d at 372. *Norwood* provides insubstantial guidance because that court did not conduct any substantive analysis of the effect of the provisions of N.C. Gen Stat. § 20-58 on a levied vehicle. In fact, the requirement that a security interest be indicated on a certificate of title was effective after the dates relevant to the *Norwood* case and shortly before the opinion was issued.

21. The *Norwood* opinion, authored by the Honorable William B. Rodman, Jr., acknowledged the changes in the law and stated that under the revised Chapter 20 of the North Carolina General Statutes, "[w]hen a levy has been made on an automobile pursuant to an execution, it is now the duty of the officer to report the levy to the [DMV] in a form prescribed by it. The levy so reported is subordinate to all liens theretofore noted on the certificate by the

7

[DMV]." *Norwood,* 125 S.E.2d at 372. The context of this statement primarily related to the manner in which a lienholder would need to perfect a lien in order to maintain priority over a subsequent creditor that obtains a lien through levy, and again does not substantively analyze the effect of N.C. Gen Stat. § 20-58 on a levied vehicle. The *Norwood* case provides no analysis, for example, of whether the date of levy or the date the levy is reported, if they differed, would constitute the date of perfection. The absence of that inquiry and analysis indicates that court was not endeavoring to determine the relationship between levy and perfection.

22. Principis also cites *Ferguson* in support of its position. The *Ferguson* court was tasked with two determinations. The first was to determine when a lender perfected its interest in a vehicle. The other was then to determine whether that lender's interest had priority over a judgment creditor's lien created by levy. The court found the lender perfected its interest prior to levy. *Ferguson*, 191 S.E.2d at 821. In its analysis, the court stated "[t]he crucial question is whether [lender's] security interest was perfected prior to [the date of levy]." *Id.* at 820. Principis cites this quote for the proposition that levy perfects a lien; however, this court does not assign great weight to that sentence because the *Ferguson* court found the lender perfected its lien prior to levy. The court, therefore, had no reason to analyze substantively the applicability of N.C. Gen Stat. § 20-58 to a levied vehicle. Given the explicit language of N.C. Gen. Stat. § 20-58, the conclusory sentences in *Norwood* and the court's statement in *Ferguson* have little binding effect upon the current case.

23. The court is aware of *Wachovia Bank & Trust Co. v. Wayne Finance Co*., 138 S.E.2d 481 (N.C. 1964). Justice Rodman also authored *Wachovia* which involved an unscrupulous used car dealer who sought to borrow money from two lenders using the same motor vehicles as collateral. All of the events in *Wachovia* occurred after the enactment of the newly-legislated N.C.

Gen. Stat. § 20-58.[3]  Wachovia Bank loaned money to the dealer for the purpose of purchasing twelve used cars for resale. 138 S.E.2d at 481.  Those purchases were to be secured by a "chattel mortgage" on each vehicle, and Wachovia Bank took possession of the motor vehicle collateral after the "mortgages were . . . filed for record." *Id.*  Wachovia Bank did not record its lien on the certificates of title at the time it recorded its chattel mortgages and returned those certificates of title to the dealer. *Id.*

24.  Within eight days of Wachovia Bank's loan, Wayne Finance Company ("Wayne") loaned money to the dealer, who used the same vehicles as collateral. *Id.*  Wayne examined the vehicles and took possession of the certificates of title which did not indicate any other encumbrances.  Wayne did not record its lien on the titles.  With the titles in the possession of Wayne having no lien notation, Wachovia Bank and Wayne agreed to sell[4] the vehicles.  The proceeds of the sale were insufficient to satisfy either lender, and that shortfall generated the litigation. *Id.*  Justice Rodman ultimately found that Wachovia Bank "acquired a valid lien [senior to that of Wayne] from the moment it took possession." *Id.* at 484.

25.  Justice Rodman began with a recognition that perfection of a lien in personal property typically is by recordation and quoted N.C. Gen. Stat. § 47-20. *Id.* at 482 ("No * * * mortgage of * * * personal property * * * shall be valid to pass any property as against lien creditors or purchasers for a valuable consideration from the * * * mortgagor, but from the time of registration thereof * * *." (quoting N.C. Gen. Stat. § 47-20 (1959)).[5]  Justice Rodman indicated, however, that the applicability of N.C. Gen. Stat. § 47-20 was limited to situations in which the "mortgagor is permitted to retain possession of chattels." *Id.*  He then noted that "if the provisions

---

[3] This statute was effective on January 1, 1962. N.C. Gen. Stat. § 20-58.10 (1961).
[4] It is unclear whether the sale of the motor vehicle collateral was voluntary or involuntary.
[5] Justice Rodman used asterisks instead of the more common ellipses.

9

of [§ 47-20] were here controlling," Wachovia Bank's interest would have priority over Wayne's because Wachovia Bank had recorded its mortgages and had possession of the vehicles when Wayne recorded its mortgages. *Id.* at 483. Justice Rodman cited multiple cases, including *McCreary Tire & Rubber Co. v. Crawford*, 116 S.E.2d 491 (N.C. 1960) which, citing § 47-20, held that "[i]f a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between the parties, although it be not acknowledged and recorded . . . ." 116 S.E.2d at 496 (quoting Leonard A. Jones, The Law of Chattel Mortgages and Conditional Sales, 6th Ed., Vol. 1, Sec. 178 (1933)). Thus, *Wachovia* emphasized that perfection of personal property could be achieved by possession, notwithstanding N.C. Gen. Stat. § 47-20.

26.     The *Wachovia* analysis relying on possession may have been more accurate if the collateral were not motor vehicles or the litigation occurred prior to January 1, 1962. That court fully recognized the certificate of title recording requirements under NC. Gen. Stat. § 20-58, even reciting the legislative preamble in the opinion. 138 S.E.2d at 483. A portion of that preamble states as follows:

> WHEREAS, the present certificate of title law does not meet the requisites of the Uniform Title Code because the certificate of title is not in and of itself adequate notice to third parties of existing liens; and
>
> WHEREAS, a certificate of title that can be relied upon as a ready means by which all legal interests in motor vehicles may be determined would be to the public interest.

*Id*. (quoting Act effective January 1, 1962, S.L. 1961, ch. 835 (1961)).

27.     Rather than applying the clear legislative intent that lien recordation on the certificates of title is the method to perfect lien interests in motor vehicles beginning January 1, 1962, the court in *Wachovia* digressed to pre-1962 law that recognized possession as a means of

10

perfection on all personal property, including motor vehicles. The damage to a creditor caused by the borrower in *Wachovia* is an excellent example of why a lien or security interest in a motor vehicle must be perfected by recordation of a lien on the certificate of title. Despite acknowledging the explicit language of the preamble to N.C. Gen. Stat. § 20-58, the court in *Wachovia* found that the application of North Carolina "recording statutes have been limited to those cases where the mortgagor retained possession of the chattel" and "the reason given for the enactment [of § 20-58 does not] lead one to conclude the Legislature intended to prevent the creation of a valid lien by delivering possession of the chattel to the creditor." *Id.* at 483-84. To support this conclusion, the court cited five cases holding that recording statutes only apply to situations in which the mortgagor retains possession; however, all of those cases were decided prior to the enactment of N.C. Gen. Stat. § 20-58, one as early as 1846. *Id.* at 484. Justice Rodman, faced with the relatively new regulations of N.C. Gen. Stat. § 20-58, was too hesitant to abandon principles that had been in place for over a century, despite the clear language of § 20-58 and its preamble. The *Wachovia* case has little precedent for this court to follow.

28. The court is also aware of *National Bank of Alaska v. Sprinkle*, 164 S.E.2d 611 (N.C. Ct. App. 1968). In *Sprinkle* the North Carolina Court of Appeals relied on the flawed *Wachovia* analysis. 164 S.E.2d at 617. In direct contravention of N.C. Gen. Stat. § 20-58 which states that perfection is obtained by recordation on the certificate of title, that court digressed to possession as a means of lien perfection on a vehicle. *Id.* Like *Wachovia*, *Sprinkle* has little precedence and application to the facts of the present case.

29. Principis also argues the court should infer meaning from the fact that Principis likely would not be able to obtain a notation of its lien on the titles to the Vehicles pursuant to NC. Gen. Stat. § 20-58 before the sale scheduled for thirty days after the levy; however, the timing of

a scheduled sale should not dictate the court's interpretation of the relevant statutes. Similarly, the fact that § 20-58 requires the debtor to sign the application for a lien to be noted on a vehicle's title does not dissuade the court from finding § 20-58 to be applicable. Although it is possible a judgment creditor may never be able to perfect a lien created through levy due to a debtor's refusal to cooperate, the language of § 20-58 is clear, and the exceptions listed in § 20-58.8 do not include liens created by levy. The provisions of Chapter 20 of the North Carolina General Statutes leave levying creditors vulnerable to a debtor filing for bankruptcy protection and the resulting protections, but it is not this court's responsibility or authority to supplement legislation by the North Carolina General Assembly. If the Debtor had not filed a bankruptcy petition after the levy, and if the Tax Liens were inapplicable, Principis probably would have been entitled to the proceeds of the sale of the Vehicles as an unperfected lienholder. In this case, though, the Debtor filed for bankruptcy protection, and Principis' unperfected status became relevant to its rights. As of the Petition Date, Principis' lien was unperfected.

<u>The Vehicles Should Be Returned to the Debtor</u>

30. Pursuant to 11 U.S.C. § 542(a),

> an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under [11 U.S.C. § 363], or that the debtor may exempt under [11 U.S.C. § 522], shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (1994).

31. A "bankruptcy court[] may order the turnover of property in which the debtor holds only a contingent possessory right, such as a right of redemption or the right to cure a default, as long as adequate protection can be afforded to the secured party." *Bryn Athyn Investors v. Hutton/Conam Realty Pension Investors (In re Bryn Athyn Investors)*, 69 B.R. 452, 456 (Bankr.

12

E.D.N.C. 1987) (quoting *In re Barton,* 58 B.R. 468 (Bank. D. S.D. 1986)).  The OCSD had not completed an execution sale as of the Petition Date, and the Debtor retained a right of redemption in the Vehicles.

32.     The Debtor may or may not have had absolute ownership of the Ford as of the Petition Date.   If N.C. Gen. Stat. § 20-72(b) is controlling,

> no ownership passes to the purchaser of a motor vehicle which requires registration under the Motor Vehicle Act of 1937 until (1) the owner executes, in the presence of a person authorized to administer oaths, an assignment and warranty of title on the reverse of the certificate of title, including the name and address of the transferee, (2) there is an actual or constructive delivery of the motor vehicle, and (3) the duly assigned certificate of title is delivered to the transferee.

*Nationwide Mut. Ins. Co. v. Hayes*, 174 S.E.2d 511, 524 (N.C. 1970) (citing N.C. Gen. Stat. § 20-72(b) (1963)).  If the Uniform Commercial Code applies to the transfer of the Ford from Jacksonville Paving to the Debtor, title to the Ford passed to the Debtor when Jacksonville Paving delivered the Ford to the Debtor in performance of the parties' agreement. *See* N.C. Gen. Stat. § 25-2-401 (2006); *Ivey v. Wilson (In re Payne)*, 2006 Bankr. LEXIS 4199, *16-19 (Bankr. M.D.N.C. Dec. 6, 2006) (finding that N.C. Gen. Stat. § 20-72(b) only "controls in situations involving tort law and liability insurance coverage.").

33.     Regardless of whether N.C. Gen. Stat. 20-72(b) or N.C. Gen. Stat. § 25-2-401 applies to the facts behind the Debtor's acquisition of the Ford, the Debtor clearly held either an equitable or ownership interest in the Ford as of the Petition Date.  The owner of record of the Ford, Jacksonville Paving, executed a notarized letter stating it sold the Ford to the Debtor.  That letter suggests Jacksonville Paving would be willing to transfer title to the Debtor under N.C. Gen. Stat. 20-72(b).  Sgt. Parker also testified the notarized letter was sufficient evidence for the DMV to process a title application for the purchaser of the Ford at an execution sale.  The evidence before

the court is sufficient to support a finding that the Debtor had at least an equitable interest in the Ford as of the Petition Date, and the Ford is property of the estate under 11 U.S.C. § 541.[6]

34. The court notes that based on the Debtor's testimony of the value of the Vehicles, the Debtor has no equity in the Vehicles if the Tax Liens and Principis' unperfected lien are considered.[7] Principis asserts the Vehicles are of inconsequential value to the estate because of the Debtor's lack of equity and also because they are not necessary to an effective reorganization. "By permitting reorganization, Congress anticipated that [a] business would continue to provide jobs [and] to satisfy creditors' claims . . . . Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business . . . ." *United States v. Whiting Pools*, 462 U.S. 198, 203 (1983). (citing H. R. Rep. No. 95-595, p. 220 (1977)). The Debtor testified that the Ford's presence at Triple-C generates business. Although the Debtor's spouse left for Florida after the Vehicles were seized, the Dodge, along with the Debtor's third vehicle, will be used by the Debtor and his spouse upon her return to North Carolina. The Vehicles will allow both the Debtor and his spouse to continue to generate income through Triple-C. The Vehicles are not of inconsequential value to the estate.

35. The Debtor retained an interest in the Vehicles as of Petition Date, the Vehicles are a benefit to the Debtor's estate and the Vehicles are subject to turnover under 11 U.S.C. § 542. "The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession." *Whiting Pools*, 462 U.S. at 207. The court's July 19, 2017 Order required the Debtor to name Principis as a loss payee on the insurance policy of the Dodge prior to turnover. Principis has filed a Motion seeking relief

---

[6] Subject to certain enumerated exceptions, a debtor's estate generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2016).
[7] This is true regardless of whether the Tax Liens have attached to the Ford.

14

from the automatic stay or, in the alternative, adequate protection of its interests. That Motion has been scheduled for hearing, and the court will determine whether to grant additional adequate protection to Principis at that time.

END OF DOCUMENT